

**LUJAN AGUIGUI & PEREZ** LLP
DNA Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone: (671) 477-8064
Facsimile: (671) 477-5297

*Attorneys for Defendant*
*Duane Anthony Calvo*

**FILED**
**DISTRICT COURT OF GUAM**

NOV 30 2007

**JEANNE G. QUINATA**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-vs-<br><br>DUANE ANTHONY CALVO,<br><br>Defendant. | CRIMINAL CASE NO. CR05-00016<br><br>**DEFENDANT'S PRESENTENCE REPORT RESPONSES** |

Defendant, by and through counsel, **LUJAN AGUIGUI & PEREZ** LLP, responds to the

Presentence Investigation Report ("PSR") dated November 7, 2007, as follows, *inter alia*:

1. ¶ 11, Adjustment to Incarceration:

Defendant objects to any determination that he committed any misconduct while incarcerated

any disputes and allegation that he did.

2. ¶ 12, Adjustment to Incarceration:

Defendant objects to the language, "…the defendant arrived at FCI Safford in Arizona as a

*disciplinary* transfer…"

3. ¶¶ 14-29, The Offense Conduct:

Defendant objects to any facts which he did not stipulate to at the Change of Plea hearing,

which are alleged in PSR paragraphs 14 through 29, which the government has not proven,

1 which may detrimentally impact his sentence. The Defendant stipulates to all facts admitted at

2 the Change of Plea hearing. At the Change of Plea hearing Calvo's counsel made the following

3 factual assertions:

> One, that Mr. Calvo made phone calls to the confidential informant in this case known to Mr. Calvo as Kimmie, arranged with her to pick up the ice from the hotel room, he then proceeded to that hotel where he attempted to purchase the ice, which he had the intent to distribute. Change of Plea ("COP") (12:13-18)

The Government stated:

> Yes, Your Honor, the stipulation must include the fact that the quantity was two kilos. ("COP") (12:20-21).

Calvo's counsel stated:

That's fine, Your Honor. (12:23)

These facts establish the undisputed drug quantity attributable to Calvo of 50 grams, with a base offense level of 32. No higher quantity was either stipulated by Calvo nor proven by the government because: (1) Calvo pled straight up to the Indictment which charged an approximate rather than specific drug quantity; (2) no drug purity was stipulated to nor proven by the government; (3) no actual methamphetamine was involved in the intended transaction; (4) no transaction had been consummated; (5) the drug quantity asserted by the government which should be attributed to Calvo is arbitrary, subjective, artificially high, and amounts to sentencing entrapment; and (6) the statutory threshold to which Calvo pled is triggered by 50 grams of ice, an amount which has been established and which is not disputed.

4. ¶¶ 33-35, 44, Adjustment for Acceptance of Responsibility:

There is no dispute that Calvo is entitled to a three level downward adjustment for acceptance of responsibility. Application Note 2 to U.S.S.G. 5K1.1 provides in part that "[t]he sentencing reduction for assistance to authorities shall be considered independently of any reduction for acceptance of responsibility." In the instant case, there is no dispute Calvo is

*United States of America v. Duane Anthony Calvo;*
District Court Case No. CR05-00016
Defendant's Presentence Report Responses

Case 4:05-cr-00016 Document 109    Filed 11/30/2007    Page 2 of 11

entitled to receive acceptance of responsibility credit and substantial assistance credit. However, credit for acceptance of responsibility must be given in addition to credit for substantial assistance to authorities.

5. ¶¶ 37-38, Base Offense Level:

Defendant objects to a base offense calculation of 38 based upon a drug quantity of 1.5 kilos or more of "ice." Defendant asserts that the drug quantity which should be attributed to him is 50 grams of methamphetamine with a base offense level of 32, on the following grounds, inter alia:

(1) Calvo pled "straight up" without a Plea Agreement to the indicted charge which alleged, "On or about February 18, 2005…Calvo…did unlawfully and knowingly attempt to possess with intent to distribute *approximately* 2 kilos net weight of methamphetamine hydrochloride…" (Emphasis added). The Indictment failed to establish a specific drug quantity.

(2) Similarly, the Indictment failed to establish drug purity. In order to determine drug quantity, drug purity must either be stipulated to or proven. In the instant case Calvo did not stipulate to drug purity nor did the government prove drug purity.

(3) In fact, no actual methamphetamine had been transacted. It is undisputed that the government attempted to deliver sham or "look-alike" methamphetamine to the defendants. PSR paragraph 17 states:

> On February 18, 2005, the CI met with SA P. Griffith and SA J. Anderson at the Holiday Inn Hotel in Tumon, Guam in preparation for the purchase of "ice" by Calvo. Earlier, *special agents placed four translucent plastic bags each containing approximately ½ kilogram of "look alike" crystal methamphetamine into a small black bag.* (Emphasis added).

///

*United States of America v. Duane Anthony Calvo;*
District Court Case No. CR05-00016
Defendant's Presentence Report Responses

Case 1:05-cr-00016   Document 109   Filed 11/30/2007   Page 3 of 11

The original sentencing judge stated:

> Here's the part of it that I'm uncomfortable with, and it's been a source, I think, of discomfort historically, when the penalty is based on the amount. And here we don't have an actual transaction of methamphetamine, we have *look alike methamphetamine*. And the amount originates with law enforcement. I mean, what's to say they couldn't have said, we've got five kilos...it just seems to me there's a certain *arbitrariness* when the amount of the drug dictates the penalty, and the amount originates with law enforcement." Sentencing Transcript ("ST") (23:6-19) (emphases added).

In the instant case, the two kilogram drug quantity the government seeks to attribute to Calvo is artificially high, amounts under the circumstances to sentencing entrapment, and is fundamentally unfair.

(4) In fact, the transaction had not been consummated.

The intended transaction required the defendants, including Calvo, to pay cash for the methamphetamine. PSR paragraph 16 states, "The CI indicated [to Calvo] that a cash down payment would be required for an order to be placed. Calvo stated that he would be able to secure at least $5,000 for an initial down payment."

PSR paragraph 18 indicates that Calvo could not come up with the money. It states, "The CI next telephonically contacted Duane Calvo to advise him that the merchandise was ready for pick up. Calvo stated that he had been attempting to acquire the $5,000 for the deposit but was unsuccessful." (Emphasis added).

PSR paragraph 19 states, "A short time later the CI again contacted Calvo, who stated that he was unable to gather any money." (Emphasis added).

PSR paragraph 20 states, "Calvo contacted the CI and was invited up to room #1143. Once inside the room, the CI advised Calvo that he/she told the source of supply that Calvo had the money."

*United States of America v. Duane Anthony Calvo;*
District Court Case No. CR05-00016
Defendant's Presentence Report Responses

Case 1:05-cr-00016 Document 109    Filed 11/30/2007    Page 4 of 11

1  PSR paragraph 21 states, "Since Calvo did not have the money for the drugs, the CI informed

2  [Calvo] that he/she would have to meet with the supplier to discuss the money issue. The CI then

3  left the hotel room. At this time, agents effectuated the arrests of Calvo, Santos, and Ramon

4  Calvo..."

5  PSR paragraph 28 indicates that the government used a friend of Calvo's as its CI, Kimmie.

6  It states, "Duane Calvo stated that he was going to get the drugs from a friend named Kimmie."

7  

8  The original sentencing judge expressed concern about the government's conduct,

9  stating:

10              But what am I to make of the fact that [Calvo] could not come up with the
              money, and he was never offered the opportunity to buy a lesser amount. I mean
11              in ordinary exchanges, whether it's drugs or something else, if you can't afford
              two kilos, you say, well, maybe I'll take one kilo. And that opportunity was
12              never offered...But here *we didn't have a consummated transaction*...That's the
              part that is, seems to me a little bit *subjective and arbitrary*. ("ST") (24:7-
              5:2)(Emphases added).

13  (5) Defendant pled straight up to violating of 21 U.S.C. 841(a)(1), (b)(1)(a)(viii), and 846.

14  The threshold drug quantity attributable to Calvo is 50 grams. This amount is undisputed.

15  Any higher amount is disputed and has not been nor can it be proven by the government, even

16  

17  through the testimony of Kimmie Dang, or anyone else: (a) the Indictment alleged an

18  approximate rather than specific amount; (b) no drug purity was stipulated to nor can it be

19  proven by the government; (c) no actual methamphetamine was involved in the intended

20  transaction; (d) no actual transaction was consummated; (e) the government's actions in this case

21  amount to sentencing entrapment: (i) the government unilaterally determined the amount for the

22  

23  intended transaction; (ii) the government never offered Calvo the opportunity to transact a lesser

24  amount; (iii) Calvo was unable to perform his side of the intended transaction because he was

25  unable to come up with the required $5,000 cash deposit; (iv) the government still arrested Calvo

26  

27  

28

*United States of America v. Duane Anthony Calvo;*
District Court Case No. CR05-00016
Defendant's Presentence Report Responses

Case 1:05-cr-00016 Document 109    Filed 11/30/2007    Page 5 of 11

as through a transaction had occurred; (v) the government used a friend, Kimmie Dang, to entice Calvo into a two kilogram transaction.

(6) The burden of proof is on the government to establish drug quantity. *U.S. v. Harrison-Philpot*, 978 F.2d 1520.

The government has the burden of proving any drug quantity above 50 grams. However, there is no proof whatsoever that any higher amount can be attributed to Calvo in this case because there was in fact no actual controlled substance in existence and because Calvo did not stipulate to a specific drug quantity of two kilograms of pure ice.

6. ¶ 112, U.S.S.G. 5K1.1 Downward Departure:

Calvo agrees that he should be given a downward departure for his substantial assistance to law enforcement. Calvo respectfully asserts that the amount of downward adjustment should be greater than 3 levels and intends to present arguments, documentary and testimonial evidence at the sentencing hearing for the Court's consideration. Calvo reiterates that he should receive separate and independent credit for his acceptance of responsibility and substantial assistance to law enforcement (as well as any other applicable downward departure credit or adjustment which the Court may deem appropriate).

7. ¶ 113, Factors that May Warrant a Sentence Outside the Advisory Guideline Range:

Defendant requests that the Court depart downward and/or impose a sentence lower than that provided by the advisory guideline range based upon the following factors, independently, or in combination:

(1) Sentencing entrapment

A downward departure should be applied because the government engaged in sentencing entrapment of Calvo when it induced Calvo to engage in an intended two kilogram ice transaction, using Calvo's friend as a confidential informant, artificially increasing the drug

quantity to an arbitrarily high level, inducing Calvo to agree to participate in a transaction for which he could not even afford to make the initial cash down payment of $5,000.00. In fact, Calvo had been unable to obtain any money to consummate the transaction.

Application Note 14 to U.S.S.G. 2D1.1 provides:

> If, in a reverse sting (an operation in which the government agent sells or negotiates to sell a controlled substance to a defendant), the court finds hat the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance than his available resources would have allowed him to purchase except for the artificially low price set by the government agent, a downward departure may be warranted.

In the instant case, the government employed an agent, Calvo's friend, to sell or negotiate methamphetamine. In order to enter into the transaction with the CI, Calvo was required to make a cash down payment of $5,000.00. It is undisputed that Calvo was unsuccessful in coming up with the money. The government's own factual allegations establish that Calvo was never able to come with not only the $5,000.00 but also any other amount in order to consummate the transaction. The transaction never consummated because the CI told Calvo that she had told the source of supply that Calvo would have the money. When she realized he didn't, she told Calvo she would have to discuss this with the source. She then left the room at which time agents arrested Calvo and the co-defendants. Assuming arguendo, that the transaction was consummated, it remains sentencing entrapment because Calvo would have received the controlled substance without any payment whatsoever even though a cash down payment had been required.

Upon information and belief, the evidence at the sentencing will show that government agents told their CI to increase the amount to transact to Calvo, to "give him more," in an effort

*United States of America v. Duane Anthony Calvo;*
District Court Case No. CR05-00016
Defendant's Presentence Report Responses

Case 2:05-cr-00016 Document 109   Filed 11/30/2007   Page 7 of 11

to increase his sentence exposure. It is undisputed that the government agents packaged the look alike methamphetamine and placed it on the hotel bed where the transaction was to occur.

The Ninth Circuit has authorized a departure where the defendant was pressured to sell more drugs. *US v. Staufer*, 38 F.3d 1103 (9th Cir. 1994). The Ninth Circuit has also held that excluding amounts of drugs based on sentencing entrapment may reduce the sentence below the mandatory minimum amount. *US v. Castaneda*, 94 F.3d 592 (9th Cir. 1996). The district court must make express findings in rejecting a sentencing entrapment claim. *U.S. v. Riewe*, 165 F.3d 727 (9th Cir. 1999) (reversing where district court simply said, "the presentence report correctly calculate[d] the sentencing guidelines"); *U.S. v. Naranjo*, 52 F.3d 245 (9th Cir. 1995)(reversing for failure to make clear findings on "sentencing entrapment").

(2) Drug purity

A downward departure should be applied because the government attributes artificially high drug purity to Calvo. In fact, drug purity had never been established by stipulation or government proof. In fact, the government can never prove drug purity because no actual methamphetamine was transacted. The purported drug quantity and purity was in the complete control of the government and Calvo had no control whatsoever over the quantity or purity. The Ninth Circuit said that a downward departure was permissible for a middle man in a methamphetamine transaction who had no control over, or knowledge of, the purity of the methamphetamine he delivered. *U.S. v. Mendoza*, 121 F.3d 510 (9th Cir. 1997). The Ninth Circuit also held that an extremely low purity of drug might be a basis for departure. *U.S. v. Mikaelian*, 168 F.3d 380 (9th Cir. 1999), amended, 180 F.3d 1091 (9th Cir. 1999). In the instant case, the government employed look alike or sham methamphetamine with no purity.

*United States of America v. Duane Anthony Calvo*;
District Court Case No. CR05-00016
Defendant's Presentence Report Responses ocument 109     Filed 11/30/2007     Page 8 of 11

(3) Sentencing disparity

The Ninth Circuit has held that a downward departure to equalize sentencing disparity in appropriate circumstances is permitted, but only where the codefendants are convicted of the same offense as the defendant. *U.S. v. Tzoc-Sierra*, 387 F.3d 978 (9th Cir. 1999); *U.S. v. Caperna*, 251 F.3d 827 (9th Cir. 2001). In the instant case, Calvo was indicted along with two codefendants, Raymond Calvo and John Santos. (PSR cover page, PSR ¶¶ 8-9). All defendants were convicted of the same offense. Raymond Calvo received a sentence of 48 months. John Santos received a sentence of 65 months. Although Calvo had a criminal history category of II and a prior felony conviction, with the substantial assistance downward departure he was no longer subject to a mandatory minimum sentence, and ended up with a 15 year sentence, resulting in significant sentencing disparity among the defendants. A downward departure is requested to equalize the sentences imposed in this case.

(4) Disparate severity of federal sentences on Guam residents

A lengthy federal sentence on Guam resident defendants such as Calvo results in disproportionately severe punishment because defendants such as Calvo are isolated from their families who may have limited or no visitation access due to distance and expense restraints and cultural deprivation as there are few if any other inmates with a Chamorro or Guam background with whom to endure the prison experience. In Calvo's case, he is isolated from his family members, specifically including his children and his father, who lack visitation access to him. Consequently, Calvo's federal sentence results in him being deprived of familial contact except on those rare occasions, should they occur, when his family is able to afford the expense of traveling to the United States, and when their school and work schedules permit, and when travel and accommodations are available at reasonable rates they might afford. Calvo's punishment is

Page 9 of 11
*United States of America v. Duane Anthony Calvo;*
District Court Case No. CR05-00016
Defendant's Sentencing Memorandum and Response

Case 1:05-cr-00016 Document 109     Filed 11/30/2007     Page 9 of 11

1  more severe than defendant's who have ready visitation access because he is essentially deprived

2  of any meaningful ability to observe or participate in his children's childhood experiences. One

3  of Calvo's main goals is to be released from incarceration to attend his child's high school

4  graduation. Additionally, unlike many federal defendants serving time in prison, Calvo is one of

5  the few, if any, defendants with a Chamorro or Guam background. Sharing the prison experience

6  with those of similar cultural backgrounds is one of the ways a person can rehabilitate while

7  incarcerated, to turn a tragic experience into one that is positive.

8

9       (5) Motion for downward Departure Under 18 U.S.C. 3553 and/or 5K2.0

10       18 U.S.C. § 3553 provides that the Court "shall impose a sentence sufficient, but not

11  greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection."

12  Under this statute the Court shall consider the nature and characteristics of the Defendant and the

13  need for the sentence imposed in fixing a sentence. 18 U.S.C. § 3553(a) (1) and (2). Mr. Calvo

14

15  asks the Court to consider the following:

16       Although subsections (e) and (f) discuss limited situations in which a court might depart

17  from a mandatory statutory minimum, section 3553 does not specifically prohibit the court from

18  exercising its discretion to impose a sentence it deems appropriate given the nature and

19  characteristics of the Defendant and the need for the sentence to be imposed, even below a

20  statutory minimum.

21

22  ///

23

24

25  ///

26

27

28

*United States of America v. Duane Anthony Calvo;*
District Court Case No. CR05-00016
Defendant's Presentence Report Response

1  U.S.S.G. 5K2.0 permits the Court to depart downward below guideline range. There is no

2  prohibition under this provision which prevents the Court from using its discretion to impose a

3  sentence below a mandatory statutory minimum in appropriate *cases See U.S. v. Aguilar-Ayala*,

4  120 F.3d 176 (9th Cir. 1997).

5       Dated this 30th day of November, 2007.

6

7                       **LUJAN AGUIGUI & PEREZ** LLP

8

9  By:        _____

10                      **PETER C. PEREZ, ESQ.**
                     Attorneys for Defendant Duane Calvo

11

12

13 C-0077/661-00/0661/PCP/dmg

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---